UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RICHARD A. CAMPBELL and          CIVIL CASE NO. 03-40164
MARY M. CAMPBELL,

                 Plaintiffs,

                             HONORABLE PAUL V. GADOLA
v.                               U.S. DISTRICT JUDGE

BRIDGEVIEW MARINA, Ltd.,
NEEDHAM'S MARINE, Ltd., and
CAPTAIN'S YACHTING SERVICES,
Ltd.,

                 Defendants.
_____/

## MEMORANDUM OPINION AND ORDER

Before the Court are three motions: (1) a motion by Defendant Needham's Marine to dismiss for lack of personal jurisdiction, (2) a motion by Defendant Needham's Marine to dismiss based on the doctrine of <u>forum</u> <u>non</u> <u>conveniens</u>, and (3) a motion by Defendants Captain's Yachting Service and Bridgeview Marina to dismiss based on the doctrine of <u>forum</u> <u>non</u> <u>conveniens</u>. For the reasons stated below, the Court will grant Defendant Needham's Marine's motion to dismiss for lack of personal jurisdiction, deny as moot Defendant Needham Marine's motion to dismiss on the doctrine of <u>forum</u> <u>non</u> <u>conveniens</u>, and grant the other Defendants' motion to dismiss on the doctrine of <u>forum</u> <u>non</u> <u>conveniens</u>.

## I.    BACKGROUND

This case arises out of repairs made to a sailing vessel, the Gael.  The Gael hails from the port of Philadelphia, Pennsylvania.  Plaintiffs, who are Michigan citizens, wholly own a Delaware corporation that owns the Gael.  While sailing in Lake Huron on September 1, 2000, the Gael ran aground near Lexington, Michigan and sustained significant damage.  The Gael was towed to Ontario, Canada, where it was allegedly serviced by Captain's Yachting Service, Bridgeview Marina, and Needham's Marine.  Plaintiffs have brought suit against Defendants alleging claims for breach of contract, fraud, rescission, fraud in the inducement, and violation of the Michigan Consumer Protection Act.  The Court has subject matter jurisdiction over this case based on diversity of citizenship pursuant to 28 U.S.C. § 1332.

Defendant Needham's Marine seeks to dismiss the action against it for lack of personal jurisdiction.  All of the Defendants also seek to have this case dismissed based on Plaintiffs' choice of venue.  The Court addresses each of these motions below.

## II.  MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

The Court will first address Defendant Needham's Marine's motion to dismiss based on lack of personal jurisdiction. Plaintiffs, as the party seeking to assert personal jurisdiction,

bear the burden of demonstrating that such jurisdiction exists.
McNic Oil & Gas Co. v. Ibex Resources Co., 23 F. Supp. 2d 729, 732
(E.D. Mich. 1998) (Gadola, J.).   The standard for determining
whether jurisdiction exists depends upon whether the Court holds an
evidentiary hearing on the jurisdictional issue.   In this case, the
parties have not requested, nor has this Court conducted, an
evidentiary hearing.   Consequently, Plaintiffs "need only make a
prima facie showing of jurisdiction."   Bird v. Parsons, 289 F.3d
865, 871 (6th Cir. 2002) (citation and internal quotation omitted).
When an evidentiary hearing is not conducted, the United States
Court of Appeals for the Sixth Circuit has directed the courts "not
[to] consider facts proffered by the defendant that conflict with
those offered by the plaintiff, and [to] construe the facts in a
light most favorable to the nonmoving party."   Id. (citation and
internal quotation omitted).

Under this standard, Plaintiff must demonstrate that "(1) the
Michigan long-arm statute supports the Court's exercise of personal
jurisdiction and (2) the exercise of jurisdiction would not violate
the Due Process Clause of the Fourteenth Amendment."   Viches v.
MLT, Inc., 127 F. Supp. 2d 828, 830 (E.D. Mich. 2000) (Gadola, J.).
As discussed below, Plaintiffs fail to make a sufficient showing
for this Court to exercise personal jurisdiction over Defendant

Needham's Marine under either the Michigan long-arm statute or in accordance with the Due Process Clause.

The Court will first examine whether Plaintiffs have established jurisdiction under the Michigan long-arm statute. The Michigan long-arm statute states, in relevant part, that

> the existence of any of the following relationships between an individual or his agent and the state <u>shall constitute a sufficient basis of jurisdiction</u> to enable a court of record of this state to exercise limited personal jurisdiction over the individual and to enable the court to render personal judgments against the individual or his representative arising out of an act which creates any of the following relationships:
>
> (1) The transaction of any business <u>within the state</u>.
>
> (2) The doing or causing an act to be done, or consequences to occur, <u>in the state</u> resulting in an action for tort. . .
>
> (5) Entering into a contract for services to be rendered or for materials to be furnished <u>in the state</u> by the defendant.

Mich. Comp. Laws § 600.705 (emphasis added).

The Court will first address subsection (1), the transaction of business within the state. "The phrase, 'any business within the state' has been very broadly interpreted. The term 'any' includes 'each' and 'every' and comprehends even 'the slightest' business transactions." <u>McNic Oil</u>, 23 F. Supp. 2d at 734 (Gadola, J.) (citation omitted). The Sixth Circuit has held that if

4

Defendant "has conducted even the slightest act of business <u>in</u> Michigan," the first statutory criterion for personal jurisdiction under the Michigan long-arm statute is satisfied. <u>Lanier v. Am. Bd. of Endodontics</u>, 843 F.2d 901, 906 (6th Cir. 1988) (emphasis added). This standard, however, still requires that business be transacted "<u>within</u> the state."

Plaintiff presents two arguments as to why Defendant Needham has transacted business within the state. First, Plaintiff argues that "approximately 250 of the boats docked at Defendant's facility are owned by United States citizens" and that a "significant number" of the boats repaired by Defendant are owned by United States citizens. Resp. at 1. The fact that the boats at Defendant's facility in Canada are owned by United States citizens, or even by Michigan citizens, is not evidence that Defendant has transacted business <u>within</u> Michigan. Rather, the presence of the boats only shows that a number of United States or Michigan citizens have transacted business within Canada. If Michigan citizens transact business with a Canadian business, it does not entail that the Canadian business has transacted business "within the state" of Michigan.

Plaintiff's second argument is that the particular contract negotiations between Defendant and Plaintiff constituted business

5

that was transacted within Michigan.    Specifically, Plaintiff alleges that negotiations of the contract occurred while Plaintiff was in Michigan and that the negotiations involved Defendant's use of telephone, facsimile, and regular mail with Plaintiffs in Michigan. <u>See</u> Pl. Aff. in Resp. at ¶ 5.  Plaintiffs do not allege that an agent of Defendant actually entered Michigan.  The Court must determine whether these contacts with Michigan constitute the transaction of business <u>within</u> the state of Michigan.

Plaintiff argues that the Sixth Circuit considers mail and telephone calls within Michigan to constitute the transaction of business.   <u>Lanier</u>, 843 F.2d at 906.   The <u>Lanier</u> case is distinguishable, however, not only by the amount of correspondence and communications alleged but also because the "purpose [of the correspondence] was, at least in part, to affect the quality of dental care being <u>provided to the public in Michigan</u> by raising the standards for endodontic practice" and the certification sought "would be <u>conferred upon [plaintiff] in Michigan</u>." <u>Id.</u> (emphasis added).  In this case, there are no allegations that the public would be affected by the contract or that there would be any enduring effects of the contract in Michigan.  The vessel at issue is owed by Carribean Vacations, Limited, which is incorporated in Delaware, not Michigan, and hails from a port in Pennsylvania.

Thus, although business was arguably transacted between Plaintiff and Defendant, the Court cannot conclude that the business was transacted "<u>within</u> the state."  The work was completed in Canada, Defendant does not advertise in Michigan or in the United States, and Defendant does not have an office or agent in the State of Michigan.  Therefore, the Court cannot conclude that Defendant transacted business within Michigan under § 600.705(1) of the Michigan long-arm statute.

The Court will also address whether jurisdiction exists under subsection (2) of the Michigan long-arm statute, which permits courts to exercise jurisdiction over individuals who "do[] or caus[e] an act to be done, or consequences to occur, in the state resulting in an action for tort."  Mich. Comp. Laws § 600.705(2). There is insufficient evidence to conclude that an act or consequence occurred within the state of Michigan.  The vessel in question is owned by a Delaware corporation, with its address listed in Dover, and hails from Philadelphia, Pennsylvania. Although the owners of the vessel's corporation are Michigan citizens, the Court finds insufficient evidence of a consequence occurring <u>in</u> Michigan.  For the same reasons as stated above, the Court does not find that any act or consequence occurred "<u>in</u> the state."  Even if the Court were to find such a consequence,

7

exercising jurisdiction based on such tangential connections would violate due process, as discussed below.

Finally, subsection (5) of the long-arm statute specifically provides jurisdiction for contracts "for services to be rendered or for materials to be furnished <u>in</u> the state by the defendant." Mich. Comp. Laws § 600.705(5) (emphasis added).  In this case, services were not rendered in Michigan nor were materials furnished in Michigan.  Instead, repairs were done in Canada on a vessel hailing from Pennsylvania and owned by a Delaware corporation.  The Court therefore determines that the Michigan long-arm statute does not provide for jurisdiction over Defendant.

Even if the Court were to find that jurisdiction were proper under the Michigan long-arm statute, or even under the Michigan statute for general jurisdiction, the Court determines that exercising jurisdiction over Defendant would violate the Due Process Clause of the Fourteenth Amendment.  As this Court has noted, "[t]he Due Process Clause requires Plaintiffs to show that Defendant[] [has] 'minimum contacts' with Michigan 'such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" <u>Viches</u>, 127 F. Supp. 2d at 830-31 (Gadola, J.) (quoting <u>Int'l Shoe Co. v. Wash.</u>, 326 U.S. 310, 316 (1945)); <u>See also</u> <u>McGill Tech. Ltd. v. Gourmet Techs., Inc.</u>, 300 F.

8

Supp. 2d 501, 504 (E.D. Mich. 2004) (Gadola, J.).   "Minimum contacts" exist when the defendant's "conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." Youn v. Track, Inc., 324 F.3d 409, 417 (6th Cir. 2003) (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297, (1980)).   Moreover, the defendant must "purposefully avail[] [himself] of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Id.

Under the Due Process Clause a court may exercise personal jurisdiction on either a "limited" or "general" basis.   As this Court has previously noted, "[l]imited jurisdiction exists when the cause of action at issue arises out of or relates to a defendant's contacts with the forum state, even if those contacts are isolated and sporadic." McGill, 300 F. Supp. 2d at 504-05. (Gadola, J.). General jurisdiction exists when a defendant has "substantial" or "continuous and systematic" contacts with the forum state "justifying a court's exercise of judicial authority with respect to any and all claims against the defendant; in other words, the defendant may be subject to jurisdiction even when the cause of action has no relation to the defendant's contacts with the forum state." McGill, 300 F. Supp. 2d at 505 (Gadola, J.); see also

9

<u>Youn</u>, 324 F.3d at 418.   The Court will first examine whether limited jurisdiction exists.

The Sixth Circuit has established a three-part test for determining whether a court may exercise limited jurisdiction over a defendant: (1) "the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state," (2) "the cause of action must arise from the defendant's activities there," and (3) "the acts of the defendant or consequences caused by defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable."   <u>Youn</u>, 324 F.3d at 418.

Regarding the first element, the Court determines that Defendant has not purposefully availed itself of the benefits and protections of Michigan, to such an extent that he could reasonably anticipate being haled into a Michigan court.   As the Sixth Circuit has previously stated, "[t]he mere fact that [defendant] entered into a contract with a Michigan corporation does not mean that [defendant] purposefully availed itself of the 'benefits and protections' of Michigan law. . . . It is immaterial that [defendant] placed telephone calls and sent faxes to [plaintiff] in Michigan." <u>Kerry Steel, Inc. v. Paragon Indus. Inc.</u>, 106 F.3d 147,

10

151 (6th Cir. 1997).   The Sixth Circuit has also quoted with approval an Eighth Circuit case, which stated, "[t]he use of interstate facilities (telephone, the mail), the making of payments in the forum state, and the provision for delivery within the forum state are secondary or ancillary factors and cannot alone provide the 'minimum contacts' required by due process."   <u>Id.</u> (quoting <u>Scullin Steel Co. v. Nat'l Ry. Utilization Corp.</u>, 676 F.2d 309, 314 (8th Cir. 1982)).

In this case, Plaintiffs do not claim more than the ancillary factors of the use of the telephone, facsimile, mail, and the making of payments.   Defendant's affidavit states that Defendant does not advertise in Michigan, maintain an office or agent in Michigan, or send mechanics to work in Michigan.   Def. Ex. 1. These statements are not contradicted by Plaintiffs.   While Plaintiffs purposefully availed themselves of Defendant's services in Canada, the Court cannot conclude that Defendant purposefully availed itself of Michigan law.   Exercising jurisdiction would therefore violate due process.

Regarding the second element, the Court also concludes that Plaintiffs' cause of action does not arise from Defendant Needham's Marine's activities within Michigan, as Defendant did not perform sufficient acts within Michigan.   As the Sixth Circuit has noted,

11

"the 'arising from' requirement is satisfied if the cause of action is 'related to' or 'connected with' the defendant's forum contacts." <u>Youn</u>, 324 F.3d at 419 (citing <u>Third Nat'l Bank</u>, 882 F.2d at 1091). As noted in the discussion of the previous element, Defendant has not had sufficient contacts with Michigan such that a cause of action could arise from those contacts. The fact that Michigan citizens may patronize Defendant's business does not entail that Defendant has contacts with the state. Plaintiff therefore also fails to demonstrate this element.

Regarding the third element, the Court concludes that Defendant's conduct lacks a substantial enough connection to Michigan to make this Court's exercise of jurisdiction over Defendant reasonable. Exercising jurisdiction over a foreign corporation that does not advertise in Michigan, did not initiate contact with Michigan, and did not perform any work within Michigan would be unreasonable. The mere coincidence that a number of United States citizens avail themselves of Defendant's services does not entail that Defendant has availed itself of Michigan law or sought contact with Michigan.

In summary, the Court concludes that exercising personal jurisdiction over Defendant would not be consistent with the laws of Michigan, nor would it be consistent with limited jurisdiction

under the Due Process Clause of the Fourteenth Amendment.   The
Court similarly finds that Defendant's conduct is insufficient to
establish general jurisdiction under the Due Process Clause.   The
Court will therefore grant Defendant Needham Marine's motion to
dismiss for lack of personal jurisdiction.

**III.   MOTION TO DISMISS UNDER THE DOCTRINE OF <u>FORUM</u> <u>NON</u> <u>CONVENIENS</u>**

The Court will next address the two motions to dismiss based
on the doctrine of <u>forum</u> <u>non</u> <u>conveniens</u>, one by Defendant Needham's
Marine and a second brought jointly by Defendants Captain's
Yachting Service and Bridgeview Marina.   As the Court has
determined that it lacks personal jurisdiction over Defendant
Needham's Marine, the Court will deny its motion regarding the
forum as moot, but will address and grant the motion brought by the
other Defendants.

The doctrine of <u>forum</u> <u>non</u> <u>conveniens</u> applies only to cases in
which the alternative forum is abroad.   <u>Quackenbush v. Allstate</u>
<u>Ins. Co.</u>, 517 U.S. 706, 722 (1996).   The alternative forum in this
case is abroad, in Canada.   Under the doctrine of <u>forum</u> <u>non</u>
<u>conveniens</u>, the Court must first consider whether Defendants have
"identif[ied] an alternative forum." <u>Stewart v. Dow Chem. Co.</u>, 865
F.2d 103, 106 (6th Cir. 1989) (quotation and citations omitted).

13

In this case, Defendants claim that Canada is an adequate alternative forum. Plaintiffs contest, in a single paragraph, that Canada provides an adequate alternative forum. Specifically, Plaintiff argue that they "would not be afforded a remedy regarding the claims under the Michigan Consumer Protection Act or their tort claim regarding exposure to toxic fumes." Resp. at 5. As authority for this claim, Plaintiffs cite to <u>Norfolk and Western Railroad Company v. Ayers</u>, 538 U.S. 135 (2003).

While <u>Ayers</u> may arguably provide evidence of the availability of a remedy for exposure toxic fumes in this country, the case does not demonstrate that the remedy or compensation is unavailable in Canada. Without authority, Plaintiff asserts that "[a]sking Plaintiffs to sacrifice a portion of their claims makes the Ontario Courts an inadequate and unsatisfactory forum." Resp. at 5. Defendants, however, have provided an uncontradicted affidavit of a Canadian Barrister and Solicitor, which states that "assuming the necessary factual foundation is established for this claim, it is my opinion that damages for personal injuries arising from negligent repair work would be <u>prima</u> <u>facie</u> recoverable in either the Federal Court of Canada or the Ontario Superior Court." Def. Ex. 5 at ¶ 25. The Barrister also indicated that a variety of remedies could be sought and awarded in the Canadian courts. <u>Id.</u>

at ¶ 22.

Even if a particular remedy were not available, the Sixth Circuit has held that dismissal based on <u>forum</u> <u>non</u> <u>conveniens</u> can be appropriate even if "another forum's laws are more or less favorable to one or the other party." <u>Stewart</u>, 865 F.2d at 107 (citing <u>DeMelo v. Lederle Lab.</u>, 801 F.2d 1058, 1063 (8th Cir. 1986) (affirming a district court dismissal even though Plaintiff argued that the recovery in the alternative forum might be "severely limited")). In this case, the Court concludes that Canada is an adequate alternative forum, because "although their potential damages award may be smaller, there is no danger that [Plaintiffs] will be deprived of any remedy or treated unfairly." <u>Piper Aircraft Co. v. Reyno</u>, 454 U.S. 235, 255 (1981).

Since the Court has determined that an alternative forum exists, "the trial court must [next] consider the private interests of the litigants and factors of public interest in determining relative convenience of the forum chosen by the plaintiff as opposed to the available alternative forum." <u>Stewart</u>, 865 F.2d at 106 (quoting <u>Dowling v. Richardson-Merrell, Inc.</u>, 727 F.2d 608, 616 (6th Cir. 1984)). Accordingly, the Court will consider the private and public interest factors.

The Sixth Circuit has instructed:

15

> Among the important private interest considerations are "[1] the relative ease of access to sources of proof; [2] availability of compulsory process for attendance of unwilling [witnesses], and [3] the cost of obtaining attendance of unwilling[] witnesses; [4] possibility of view of premises, if view would be appropriate to the action; [5] and all other practical problems that make trial of a case easy, expeditious and inexpensive." The Court must also consider [6] problems of enforcing a judgment if one is obtained and relative advantages and obstacles to a fair trial, if any.

Id. In this case, a view of the premises is unnecessary, so factor four does not favor either party. The parties also appear to agree that neither forum would present problems regarding a fair trial or the enforcement of a judgment. Thus, factor six also favors neither party.

The parties vigorously contest the first and second factors, the relative ease of access to sources of proof and the availability of compulsory process for the attendance of unwilling witnesses. Each party argues that the essential witnesses can only be found or compelled through the advocated forum. Having reviewed each party's argument, the Court finds that the most essential witnesses for the adjudication of this matter would be Plaintiffs themselves and the individuals who performed the repairs in Canada. As some of the individuals who performed the repairs are no longer employed by Defendants, their testimony could only be compelled through a Canadian court. Consequently, this factor favors

16

Defendants.  Furthermore, the Court notes that few of Plaintiffs' proposed witnesses are from Michigan.  Although compulsory process in this country could require the attendance of such witnesses from the various states, as a practical matter, their appearance in Canada would not be significantly more burdensome or inconvenient than their appearance in Michigan.  Thus, the costs of obtaining the witnesses, factor three, does not favor either party.

The fifth factor, "all other practical problems that make trial of a case easy, expeditious and inexpensive," strongly favors Defendants.  The Court has already determined that it lacks personal jurisdiction over Defendant Needham's Marine. Consequently, any claims against Defendant Needham's Marine may not be brought in this forum.  This litigation would therefore be more easily brought in a forum that has jurisdiction over all contemplated Defendants.  Additionally, the Court notes that Plaintiffs are familiar with Canada because, by their own admission, they "own a vacation condo in Whistler, British Columbia, Canada, where they spend part of their winter on ski vacation." Resp. at 4.  Having considered each of the factors, the Court determines that the private interest factors favor Defendants.

The Court must next examine the public interest factors

17

regarding the doctrine of <u>forum</u> <u>non</u> <u>conveniens</u>.  The Sixth Circuit has identified the following public interest factors: "[1] administrative difficulties of courts with congested dockets; [2] the burden of jury duty on people of a community having no connection with the litigation; [3] desirability of holding a trial near those most affected by it[; and (4) the] appropriateness of holding a trial in a diversity case in a court which is familiar with governing law." <u>Stewart</u>, 865 F.2d at 106 (quoting <u>Dowling</u>, 727 F.2d at 616).

The Court finds that the public interest factors favor the dismissal of this case based on the doctrine of <u>forum</u> <u>non</u> <u>conveniens</u>.  The first factor of congested dockets does not favor either party.  Regarding the second factor, there would be a substantial burden of jury duty on Michigan citizens because the litigation involves Canadian repairs to a vessel hailing from Pennsylvania, owned by a Delaware corporation, and which is not docked in Michigan.  The litigation has little connection to this community.

The Court determines that the third factor, which favors holding a trial near those most affected by it, marginally favors Defendants.  Arguably, Plaintiffs are the most affected by the incidents alleged in the complaint.  Plaintiffs are Michigan

18

citizens, but they also maintain a vacation home in Canada and possibly in Florida.  The vessel could also be considered the most affected entity involved in the matter.  The vessel hails from Pennsylvania, is owned by a Delaware corporation, and is located in Florida.  Defendants are also affected by the allegations.  As the incidents are only tangentially related to this community or to Michigan generally, the Court cannot conclude that this factor favors a trial in Michigan.  A trial in Canada would be closer to more of those affected by the incidents in question.

As noted above, the final factor is the "appropriateness of holding a trial in a diversity case in a court which is familiar with governing law." Stewart, 865 F.2d at 106 (quoting Dowling, 727 F.2d at 616).  This is a diversity case.  The Court, however, must therefore discern the appropriate governing law in this case. A contract to repair a vessel constitutes a maritime contract, and therefore involves maritime jurisdiction.  See, e.g., DeCarli v. Crusoe's Rivertown Motors, No. 93-2534, 1995 U.S. App. LEXIS 35415 at *10 (6th Cir. Oct. 19, 1995); Hatteras of Lauderdale, Inc. v. Gemini Lady, 853 F.2d 848, 849-50 (11th Cir. 1988) (citing New Bedford Dry Dock Co. v. Purdy, 258 U.S. 96, 99 (1922)).  The Court must therefore determine whether the maritime law of the United States or Canada applies in this case.

The parties both cite eight factors to guide the Court in determining whether to apply foreign maritime law or the maritime law of the United States.  These factors were used by the Supreme Court in determining whether the Jones Act applies.  Plaintiffs do not bring their complaint under the Jones Act.  Nonetheless, because the Court finds these factors to be a useful guide and because the parties agree to these factors as guides for the Court's decision, the Court will apply these factors.  The eight factors are: "(1) the place of the wrongful act; (2) the law of the flag; (3) the allegiance or domicile of the injured seaman; (4) allegiance of the defendant shipowner; (5) the place where the contract of employment was made; (6) the inaccessibility of a foreign forum; [] (7) the law of the forum; [and (8)] the shipowner's base of operations." Hellenic Lines, Ltd. v. Rhiditis, 398 U.S. 306, 308-09 (1970).  The Supreme Court noted that this test "is not a mechanical one," the factors "are not exhaustive," and the factors "must be considered in light of the national interest served by the assertion" of jurisdiction.  Id.

The parties dispute the first element, the place of the wrongful act.  The repairs occurred in Canada.  The plain language suggests that this is the "act" at issue in this litigation. Plaintiffs argue that "the damage that flowed from that negligence,

20

and from the initial breach of contract, occurred almost totally in the United States." Resp. at 13.  The Court, however, finds that it is the act and not the consequences of the act that this factor addresses.  Accordingly, this factor favors the application of Canadian maritime law.

The second factor is the law of the flag.  As the vessel in question hails from the United States, this factor favors the application of maritime law of United States.  The third factor is the allegiance or domicile of the injured party.  Whether Plaintiffs or the vessel's corporation are considered the injured party, both are in the United States.  Therefore, this factor similarly favors the application of maritime law of United States.

The fourth factor is the "allegiance of Defendant shipowner." In this case, the "Defendant" and the "shipowner" are different parties.   In the Supreme Court cases that originally listed the factors, the defendant was the shipowner and the plaintiff was the injured party.  Lauritzen v. Larsen, 345 U.S. 571 (1953).  Thus, factors three and four addressed the allegiance of the two parties to the lawsuit respectively.  Consequently, the Court determines that factor four should be read as "allegiance of Defendant," and that the addition of "shipowner" is an modifier that applied to the particular case before the Supreme Court.  Defendants in this case

are Canadian citizens.  This factor therefore favors the application of Canadian maritime law.

The fifth factor is the place of the contract.  The contract with Bridgeview Marina is "dated at Point Edward, Ontario."  Pl. Ex. 3.  As the plain language of this factor relies on the contract and not on negotiations for the contract, the Court determines that this factor favors the application of Canadian maritime law.

Factor six is the inaccessibility of a foreign forum.  This factor requires the Court to consider "the expense and loss of time in returning to a foreign forum."  Lauritzen, 345 U.S. at 590.  In this case, the alternative forums are equally accessible and in relative close proximity.  Accordingly, this factor favors neither party.

Factor seven is the law of the forum.  The forum of this case depends upon the resolution of the motion presently before the Court.  The Court will therefore not consider this factor as favoring either party.

Finally, factor eight is the shipowner's base of operations.  The vessel, its corporation, and Plaintiffs are based in the United States.  This factor therefore favors the application of maritime law of United States.

To review, two factors, the accessibility and the law of the

forum, favor neither party. Three factors, the place of the wrongful act, the allegiance of Defendant, and the place of the contract, favor the application of Canadian maritime law. Three other factors, the law of the flag, the allegiance of the injured party, and the shipowner's base of operations, favor the application of the maritime law of the United States. While the factors appear split between the parties, the Court determines that the place of the contract and Plaintiff's contacts with Canada weigh in favor of the application of Canadian maritime law. See, Lauritzen, 345 U.S. at 582 ("in dealing with international commerce we cannot be unmindful of the necessity for mutual forbearance if retaliations are to be avoided").

The Court therefore determines that Canadian maritime law would apply to this case. The Canadian courts would be the most appropriate forum to apply such law. Returning to the consideration of the public interest factors, the Court determines that the factors, including the Court's familiarity with the governing law, warrant dismissal of this case on the doctrine of forum non conveniens.

It is true that "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." Stewart, 865 F.2d at 106 (quoting Dowling, 727 F.2d at

616).  This, however, is one of those rare cases where the balance is strongly in favor of Defendants.  The Court also notes that because the Court has already determined that it lacks personal jurisdiction over one of the named Defendants, it would be in the interests of judicial economy and efficiency to dismiss this action and for the claims to proceed in a single forum.

**IV.  CONDITIONS OF DISMISSAL**

Having concluded that the doctrine of <u>forum</u> <u>non</u> <u>conveniens</u> warrants dismissal of the case, the Court will order the dismissal, with the following conditions.  As Defendants have stated that "they are agreeable to submitting the case to the courts of the province of Ontario, Canada," the Court will condition the dismissal of this case on Defendants Bridgeview Marina and Captain's Yachting Service (1) agreeing not to contest jurisdiction or service of process before such a court and (2) agreeing not to raise any statute of limitations issues arising after July 1, 2003, the date the complaint was filed in this Court.  <u>Stewart</u>, 865 F.2d at 104-05.

**V.  CONCLUSION**

**ACCORDINGLY, IT IS HEREBY ORDERED,** that Defendant Needham Marine's motion to dismiss for lack of personal jurisdiction [docket entry 11] is **GRANTED**.

24

**IT IS FURTHER ORDERED** that Defendant Needham Marine's motion to dismiss based on the doctrine of <u>forum</u> <u>non</u> <u>conveniens</u> [docket entry 12] is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that Defendants Captain's Yachting Service and Bridgeview Marina's motion to dismiss based on the doctrine of <u>forum</u> <u>non</u> <u>conveniens</u> [docket entry 9] is **GRANTED** on the conditions noted above.

**SO ORDERED.**

Dated:   <u>November 29, 2004</u>       <u>s/Paul V. Gadola</u>
                                   HONORABLE PAUL V. GADOLA
                                   UNITED STATES DISTRICT JUDGE

---

Certificate of Service

I hereby certify that on  <u>November 30, 2004</u>  , I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following:
    <u>Brian J. Miles; Mark E. Shreve</u>                                , and I hereby certify that I have mailed by United States Postal Service the paper to the following non-ECF participants:  <u>Steven M. Potter</u>                      .

                                   <u>s/Ruth A. Brissaud</u>
                                   Ruth A. Brissaud, Case Manager
                                   (810) 341-7845

---

25